## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CECIL THREET,                              )
                                           )
                    Plaintiff,             )
vs.                                        )          NO.  CIV-07-0943-HE
                                           )
CORRECTIONAL HEALTH CARE                   )
MANAGEMENT OF OKLAHOMA,                     )
INC., ET AL.,                              )
                                           )
                    Defendants.            )

## ORDER

Three motions seeking to exclude the testimony of plaintiff's expert witnesses are

pending.  Defendant Correctional Health Care Management of Oklahoma, Inc. ("CHM") has

moved to exclude the testimony of Donald F. Cohen, D.D.S., on Daubert grounds.[1]  It argues

that the expert testimony plaintiff seeks to offer through Dr. Cohen is beyond his field of

expertise and that he is therefore unqualified to offer the particular opinions.  It also argues

his proffered testimony is unreliable and based on insufficient grounds or investigation.

Additionally, both defendants have moved to exclude the testimony of Dr. James Marquart

on Daubert grounds, arguing that his opinions are outside his area of expertise or are

otherwise unreliable.  Plaintiff has responded to the motions.

The court conducted a hearing on October 14, 2009, as to the Cohen motion.  In light

of the expert reports and other submissions of the parties, including excerpts of his deposition

---

[1]Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993).  See also Fed. R. Evid. 702,
which now substantially incorporates the principles of Daubert.

1

testimony,[2] the court concludes a hearing is unnecessary as to the motion addressing Dr.

Marquart's testimony.

The standards for a <u>Daubert</u> challenge to expert testimony are familiar.  "In accord

with [Rule 702], the Supreme Court has determined that the [trial judge] 'must ensure that

any and all scientific testimony or evidence is not only relevant, but reliable.'" <u>Bitler v. A.O.

Smith Corp.</u>, 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting <u>Daubert</u>, 509 U.S. at 589).  This

gatekeeper function applies to all expert testimony, not merely to that deemed to be

"scientific" in nature.  <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 147-49 (1999).

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2) the testimony is the product of
> reliable principles and methods, and (3) the witness has applied the principles
> and methods reliably to the facts of the case.

In determining the admissibility of expert testimony, the court must initially decide

whether the proposed expert is qualified to offer an opinion on the issues involved in the

particular case.  <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 969 (10th Cir.

2001).  A qualified expert must possess the necessary knowledge, skill, experience, training

or education relevant to the facts at issue.  *Id.*  The court then must conduct a two-part

---

[2]*Two reports were submitted for Dr. Marquart, one in June of 2008 and a revised report in
August, 2008.  As notice of the revised report was timely given (after numerous extensions of the
expert disclosure deadline), it is unclear what the County defendants object to insofar as not
receiving a copy of the revised report is concerned.  They appear to have had a copy in time to
question  Dr. Marquart about it at his deposition.*

inquiry to fulfill its <u>Daubert</u> gatekeeping role, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'" <u>Bitler</u>, 400 F.3d at 1232-33 (quoting <u>Daubert</u>, 509 U.S. at 592).   In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid.  *Id.* at 1233.  Second, the district court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'"  *Id.* at 1234 (quoting <u>Daubert</u>, 509 U.S. at 597).   Is there an appropriate "fit" between the evidence offered and the material issue to which it is directed?

In determining whether an expert's proffered testimony meets the Rule's reliability standards, <u>Daubert</u> and Rule 702 provide a non-exclusive list of factors for consideration, if applicable.  As the 2000 Advisory Committee Notes to Rule 702 state:

> The specific factors explicated by the <u>Daubert</u> court are (1) whether the expert's technique or theory can be or has been tested — that is, whether the expert's  theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

The Notes also identify a number of other factors which may, in a proper case, be relevant to the determination of whether expert testimony is sufficiently reliable.  These include: (1) whether the expert proposes to testify about matters growing naturally and directly out of research he/she has conducted independent of the litigation, or whether the opinion was developed expressly for the purpose of testifying, (2) whether the expert has "unjustifiably

3

extrapolated from an accepted premise to an unfounded conclusion," (3) whether the expert has adequately accounted for obvious alternative explanations, (4) whether the expert is being as careful in his/her litigation consulting work as he or she would be in their regular professional work, and (5) whether the particular field of expertise claimed by the expert is one known to reach reliable results for the type of opinion sought to be given.   *Id.*

The burden of demonstrating the admissibility of expert testimony, as against the standards of <u>Daubert</u> and Rule 702, is on the proponent of the testimony.[3]

<u>Objections to Dr. Cohen</u>

The opinions which Dr. Cohen proposes to offer in this case are substantially as follows:[4]

1.  That fractures of the facial skeleton should be managed as an urgent situation.

2.  Once the diagnosis of such a fracture has been made, reduction and stabilization should be performed by a qualified oral and maxillofacial surgeon.

3.  The patient's treatment should not be delayed any longer than necessary to stabilize the patient.

4.  During any period of delay, treatment should at least consist of appropriate fluid and nutritional support and antibiotic prophylaxis until treatment can be completed.

---

[3]*Plaintiff's suggestion to the contrary (plaintiff's response brief, Doc. No. 96, p. 4) is in error.  See <u>U.S. v. Nachio</u>, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 970 (10th Cir. 2001).*

[4]*This listing tracks the description in plaintiff's brief [Doc. No. 95, at 10-12], which appears to summarize accurately the opinions set out somewhat more generally in Dr. Cohen's expert report [Exhibit F to Doc. No. 95].*

5.   That plaintiff's left jaw was fractured on October 6, 2006, and he was not definitively treated until October 23, 2006.

6.   During the time he was in the care of CHM, plaintiff's care was below the applicable standard of care concerning diagnosis, referral for proper care, supportive/nutritional care, and antibiotics administration for the fracture.

7.   That the most likely cause of plaintiff's seizures was hypoxia secondary to a compromised airway due to swelling associated with his untreated mandible fracture.

8.   That the onset of seizures complicated matters, prolonged his hospitalization, and caused delay in the treatment and care of his jaw.

9.   That the eighteen-day delay in reduction and stabilization may have resulted in serious complications impacting healing, further hospitalization, and the loss of sensation to a portion of plaintiff's face.

10.   That loss of sensation to the face is common in patients with jaw fractures, but does not occur in all cases.[5]

With respect to Dr. Cohen's qualifications and the scope of his expertise, the court concludes they are sufficient to support the bulk of the opinions he seeks to offer.  Dr. Cohen is a dentist, but his training and experience are not limited to general dentistry.  He has extensive training and experience in oral and maxillofacial surgery, having treated many jaw

---

[5]*Dr. Cohen's opinion as to this fact is accompanied by his statement that a majority of his patients recover sensation with proper treatment.  The court views that further statement or opinion as encompassed within opinion number 9.*

fractures over 30 years of practice.  Given the nature of his training and experience with the diagnosis and treatment of jaw fractures, the court concludes he has the necessary qualifications to offer opinions 1, 2, 3, 4, 6 and 10 above.  This conclusion flows not from the suggestion that he can opine as to a "medical" standard of care in some general sense, as CHM characterizes the issue, but because such conclusions are directly related to and grow out of the matters he would routinely deal with as a maxillofacial surgeon.  Dr. Cohen's qualifications do not, however, afford a basis for an expert opinion as to what causes seizures in general or as to the cause of plaintiff's seizures in particular.  He conceded as much at his deposition and plaintiff's subsequent efforts to shim up his qualifications in that area, based on his training and experience with administering anesthesia services to patients or to his experience with patients or their parents passing out in his dental office, are unpersuasive. Neither source of experience extends to the nature of the opinion sought to be offered here. Moreover, the modified expert report in which Dr. Cohen offered the conclusions as to the cause of plaintiff's seizure was submitted after the deadline set by the court for exchange of expert reports.  Leave to do so was not sought or obtained and the timing prevented defendants from inquiring into the basis for the opinions absent an additional, second deposition.[6]  Accordingly, and as defendant's arguments as to reliability and other matters do not warrant a different result,[7]  the court concludes Dr. Cohen will be permitted to offer

---

[6]*The fact that Dr. Cohen's first expert report "reserved the right" to amend or supplement it is of no moment here.  There is no "right" to avoid the impact of the court's scheduling order, hence there was nothing to "reserve."*

[7]*The proffered opinions appear relevant to the issues in this case.*

the opinions numbered 1, 2, 3, 4, 6 and 10,[8] but not number 7.

Defendant's arguments as to reliability and related concerns do impact the other opinions sought to be offered by Dr. Cohen. Opinion 5 and 8 are essentially factual matters as to which expert testimony is inappropriate and/or unnecessary. The remaining question is as to opinion 9 — that the delay in addressing the defendant's condition "may have" resulted in various complications. Although the opinion does not reach a conclusion as to whether the delay in this case actually caused complications for plaintiff, the court concludes the opinion is not so speculative as to render it unhelpful to the jury. It may be pertinent and helpful for the jury to know whether, as Dr. Cohen suggested at the hearing, delay can impact the healing process and/or numbness in some cases. Such a non-conclusive opinion, together with any other pertinent evidence on the point, may or may not be sufficient to support any necessary finding by the jury as to causation, but the question here is admissibility — not the sufficiency of the evidence to meet a substantive standard. In any event, the court concludes opinion 9, insofar as it states delay in treating a fracture may potentially cause complications, is of sufficient potential help to the jury to pass muster here.[9]

Applying the standards of Rule 702 and <u>Daubert</u> to the present circumstances, and subject to the limitations noted in this order, the court concludes defendant CHM's motion

---

[8]*As to opinion 10, see the limiting discussion in footnote 9 below.*

[9]*The court notes that Dr. Cohen did not opine that the delay in fact caused numbness or other complications for plaintiff in this case. Any testimony at trial must necessarily be consistent with that limitation. The same is true with respect to opinion 10 — Dr. Cohen's opinion stops short of suggesting that plaintiff's numbness is the result of delay or particular treatment in this case.*

to exclude the testimony of Dr. Cohen [Doc. No. 80] should be denied as to the matters referenced in opinions 1, 2, 3, 4, 6, 9 and 10 above, but granted as to the other opinions sought to be offered.

<u>Objection to Dr. Marquart</u>

Dr. James Marquart has a Ph.D in sociology and is a professor of crime and justice studies at the University of Texas-Dallas.  He has extensive training and experience in the general field of corrections and with a variety of criminal justice issues.[10]  He has conducted substantial research and written extensively in these areas, including some with potential applicability to this case.[11]  What he appears <u>not</u> to have done is to make any meaningful effort to identify particular principles of sociology, criminology, corrections, or anything else, and apply them to the issues in this case in such a fashion as would withstand Rule 702/<u>Daubert</u> scrutiny.  Whatever may have been the standard for admissibility of expert opinions in the pre-<u>Daubert</u> era, it is now clear that those opinions are no longer admissible simply by showing that someone is well-educated or experienced in a given area and that he/she has drawn some conclusions about issues in the case.  It does not suffice for an expert to say, in effect, "trust me, I know."  <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997) (opinion evidence not admissible where it is "connected to existing data only by the *ipse dixit*

---

[10]*Dr. Marquart also has some personal experience as a corrections officer, albeit many years ago.*

[11]*His presentations at professional meetings include papers on prisoner classification, inmate safety, and problems of overcrowding, among many others.*

of the expert").[12] Yet here, that is essentially all that Dr. Marquart has done.

Plaintiff will apparently seek to have Dr. Marquart opine as to the following: (1) that plaintiff was attacked by other inmates and suffered injury, (2) that jail personnel knew or should have known that it might happen, (3) that it was negligent for jail personnel to put plaintiff in the same cell with hostile inmates, (4) that inadequate offender classification and inadequate security led to the altercation in issue and to the constitutional violations referenced in a report on the Oklahoma County jail by the U. S. Department of Justice, (5) that jail personnel were negligent in the way they evaluated plaintiff and provided for his medical treatment, and (6) that jail personnel were deliberately indifferent to plaintiff's rights.

As a threshold matter, opinion 1 above — that plaintiff was attacked by others and suffered injury — is a factual matter rather than a matter for opinion testimony, hence there is no need to analyze it further under Rule 702's standards.  The remaining matters must be assessed from the standpoint of expert qualifications and reliability under the standards described above.

There is no doubt that Dr. Marquart possesses substantial training and experience in the corrections field and in related areas.  However, two limitations are present here which are pertinent to the opinions he seeks to offer.  First, Dr. Marquart does not have medical

---

[12]*For those disinclined, as is the court, to rely on Latin phrases when plain English will do, the phrase "ipse dixit" means "an assertion made on authority not proved", Webster's Third New International Dictionary - Unabridged (2002) or "an arbitrary statement." Webster's New College Dictionary (2001).*

training or experience of any kind and hence is not qualified, on the present showing, to render opinions as to whether the particular medical evaluation or treatment provided by defendants was appropriate or not.  As a result, his opinion numbered 5 above, relating to alleged negligence of the defendants in the evaluation and medical treatment of plaintiff, must be excluded as beyond the scope of his expertise.[13]  Similarly, Dr. Marquart acknowledges that he is not an expert on the policies and procedures of jails.  Marquart deposition, pp. 141-143.  The County defendants suggest this means he can't testify as to any prisoner classification issues which may be involved in this case and, except for noting that Dr. Marquart has read and agrees with the Department of Justice Report, plaintiff's response is silent on the point.  As no argument or other showing has been made as to how any issue as to prisoner classification is separate or different from the matter of jail policies and procedures, the court concludes Dr. Marqaurt lacks the background and experience to opine as to "inadequate offender classification," a portion of opinion number 4.[14]  As to the

---

[13]*Although plaintiff does not address the issue directly, the court notes that a few of Dr. Marquart's writings do involve health issues, such as the health concerns of older prisoners or the risks associated with HIV/AIDS in prisoners.  However, there is no obvious connection between such matters and the issues here — whether defendants' evaluation and treatment of plaintiff were appropriate, whether his condition warranted treatment as an "emergency," or whether his treatment met any medical standards otherwise applicable.  In the latter regard, the court notes Dr. Marquart's passing reference, in his expert report, to the "Standards for Health Care in Jails, 2003 edition."  However, neither his report nor other testimony identify anything specific in that report which is pertinent to the circumstances here.  His testimony suggests he believes plaintiff's treatment was deficient and not adequate for the treatment of "serious medical, dental and mental health needs" (see Marquart deposition, p. 204-207) but does not identify any standard by which that determination could be made or why he was qualified by training or experience to make it.*

[14]*The matter of his having read the DOJ report is discussed more fully below.*

other matters referenced above, the court concludes Dr. Marquart possesses sufficient qualifications in the area to offer, potentially, opinion testimony.

The principal issue with respect to Dr. Marquart's proffered testimony is not his qualifications but rather the "reliability" portion of the <u>Daubert</u> analysis — whether his opinions have a reliable basis in the knowledge and experience of his field of learning or endeavor.  It is fundamental that, if the basis for an expert's opinions is to be tested for reliability, that basis <u>must be identified</u> in some fashion.  What is the industry standard that underlies the opinion?   What is the scientific principle which explains a particular phenomena?  What is the custom or practice which, applied to the facts of the case, leads to the particular opinion of the expert?  What is the aspect of the expert's experience or training that allows him or her to reach a particular conclusion?  Absent some identification of the basis for the expert opinion, there is little or no way to test it against any of the guidelines or factors involved in a <u>Daubert</u> analysis or to otherwise determine its reliability.  As noted above, it does not suffice for an expert to say, in effect, "I have 30 years experience in the field.  So trust me, the answer is X."   That formulation is the classic *ipse dixit* approach foreclosed by <u>General Electric v. Joiner</u>, *supra*.  Similarly, it does not ordinarily solve the problem for an expert to intone, without more, that his or her opinions are based on "general principles in the field" or are relied on by "experts in the field" or that the opinions would be "generally accepted in my field" or some similar formulation.[15]  If no effort is made to

---

[15]*Dr. Cohen's expert report includes such a formulation.  The degree of specificity required in identifying the principles relied on will no doubt vary with the circumstances, depending on the*

identify the pertinent "generally accepted principles" or standards, then there is nothing to evaluate for reliability and such expressions are just a more wordy formulation of the *ipse dixit* approach.

Here, Dr. Marquart offers nothing but unspecified references to his training and experience, or to having reviewed certain materials, as the basis for his opinions.[16]  He does not identify any principle of criminology or corrections, or any study or approach, that informs his opinions.  He simply reaches conclusions which plaintiff wants to offer.  With respect to the DOJ report, Dr. Marquart says he agrees with it but gives no indication as to why he agrees.  He acknowledges that he has made no investigation or inquiry to determine whether the DOJ report is reliable or based on accepted principles of criminology, corrections, or otherwise.  He has made no independent investigation of the matters referenced in the report.  He simply agrees with the conclusions and therefore adopts them as his own.

It is true that an expert may rely on facts and opinions not otherwise admissible if they are information of a type reasonably relied on by experts in that particular field.  Fed. R. Evid. 703.  That may include reliance on the opinions of other experts so long as it does not involve the wholesale adoption of another expert's opinions without attempting to assess the

---

*field and the nature of the expertise involved.  Some will be more obvious than others.   But some principle or ground must ordinarily be identified.*

[16]*Dr. Marquart's deposition is not attached in its entirety and it is possible that portions not provided may suggest some further explanation for his opinions.  However, it is plaintiff's burden to make the necessary preliminary showing for admissibility of the evidence, as noted above, and that showing has not been made.*

validity of the opinions relied on. In re TMI Litig., 193 F.3d 613, 715-6 (3rd Cir. 1999) (concluding blind reliance by expert on another expert's opinion was flawed methodology under Daubert); TK-7 Corp. v. Estate of Barbouti, 993 F.2d 722, 732-3 (10th Cir. 1993) (expert that relied on another expert's report was excluded when the testifying expert showed no familiarity with the methods and reasons underlying the hearsay report and no basis for the other report's reliability was demonstrated). Here, Dr. Marquart relied wholly on the DOJ Report as the basis for certain of his opinions and adopted that report, without further investigation or inquiry, as his own. As a result, that report does not provide a reliable basis for expert opinions to be offered by Dr. Marquart nor does reference to it solve the problem of a lack of identification of the principles or standards relied on by him.

Based on the foregoing, the court concludes that, notwithstanding Dr. Marquart's impressive credentials in the corrections field, his proffered testimony does not meet the standards of Daubert and Fed. R. Evid. 702 and must be excluded in its entirety. In part, that conclusion is the result of his proffered opinions being outside his field of demonstrated expertise, but the bigger deficiency is the lack of identified principles, standards, or the like as the basis for his opinions. The after-the-fact adoption of the DOJ report as his own does not solve the problem.[17]

<u>Conclusion</u>

---

[17]*The manner in which the DOJ report became a basis, or <u>the</u> basis, for certain of Dr. Marquart's opinions and the absence of other inquiry by him suggest an "expert for hire" rather than someone whose litigation consulting work was handled as carefully as his other professional endeavors.*

The motion of CHM to exclude the testimony of Dr. Cohen [Doc. No. 80] is **GRANTED IN PART** and **DENIED IN PART** as set forth above.  The motions of both defendants to exclude the testimony of Dr. Marquart [Doc. Nos. 73 & 77] are **GRANTED**.

**IT IS SO ORDERED**.

Dated this 15th day of October, 2009.

JOE HEATON
UNITED STATES DISTRICT JUDGE