**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

CECIL THREET,                              )
                                           )
              Plaintiff,             )
vs.                                        )          NO.  CIV-07-0943-HE
                                           )
CORRECTIONAL HEALTH CARE                   )
MANAGEMENT OF OKLAHOMA,                     )
INC., ET AL.,                              )
                                           )
              Defendants.            )

## <u>ORDER</u>

Plaintiff Cecil Threet brings this action against the Board of County Commissioners
of Oklahoma County ("Oklahoma County"), Sheriff John Whetsel, individually and in his
official capacity, and Correctional Healthcare Management of Oklahoma, Inc. ("CHM"), the
contract provider of medical services at the Oklahoma County Detention Center ("OCDC"
or "jail").  In October 2006, plaintiff was incarcerated in the Oklahoma County jail.  While
there, plaintiff was attacked and injured by his cellmates.  Plaintiff's injuries were treated at
the jail by CHM.  Plaintiff asserts claims against all defendants, pursuant to 42 U.S.C. §
1983, for violation of his constitutional right to receive adequate medical care while
incarcerated.  Plaintiff also asserts §1983 claims against Oklahoma County and Sheriff
Whetsel, individually and in his official capacity, for violation of his constitutional right to
adequate protection from other inmates.  Additionally, he asserts state law negligence claims
against all defendants.

1

## Summary Judgment Standard

Summary judgment should be granted where — in light of the pleadings, discovery materials, and any affidavits — there is no "genuine issue" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c)(2). The court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000).

Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Where the nonmoving party bears the burden of proof at trial, as the plaintiff does in this case, he cannot rely on his pleadings to defeat summary judgment; instead, he must put forth evidence sufficient to create a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Nevertheless, the moving party must demonstrate its entitlement to judgment as a matter of law.

## Factual Background

Although the submissions of the parties make it difficult to determine the precise

extent to which particular facts are material or disputed,[1] the following facts appear to be undisputed or are supported by evidence taken in the light most favorable to plaintiff.

Plaintiff, an African-American male, was arrested on several misdemeanor charges and placed in the Oklahoma County jail on September 21, 2006.  At that time, plaintiff was put in a cell with two other males, one of which plaintiff asserts was bald headed with swastika tattoos.  Approximately a week went by without incident.  Then, several days after being placed in the cell, plaintiff reported to jail authorities that his cellmates possessed contraband (razorblades).  A search of the cell was conducted by jail personnel, apparently under circumstances designed to conceal plaintiff's identity as the impetus for the search. Plaintiff testified that, soon thereafter, he requested reassignment to a different cell, expressing concerns about his cellmates.  He was not reassigned.

The day after the contraband was reported, plaintiff was attacked in his cell by his cellmates, who claimed plaintiff had stolen a candy bar from them.   Detention officers immediately entered the cell and broke up the fight, but the fight nonetheless resulted in physical injuries to plaintiff.  He was taken to the OCDC's medical clinic where he was examined by medical personnel and diagnosed with a possible jaw fracture.

The exact nature of his care in the following days is, in some respects, disputed.  It appears undisputed that he was x-rayed at the jail on October 11, 2006, and the fracture

---

[1]*The County brief [Doc. #74] fails to separately identify and number its allegations of material undisputed facts as required by L.Cv.R. 56.1(b).  A general description of background facts is the not the same as identifying those asserted to be material.*

confirmed.  The treating physician ordered that plaintiff be seen by a specialist at the University of Oklahoma Medical Center, but no evidence has been offered to suggest an appointment was actually made by the time of his later collapse.

Plaintiff's evidence suggests that he was initially placed on a regular diet, but later prescribed a "mechanical soft" diet.  Notwithstanding the latter prescription, his testimony is that he received only one soft meal and two nutritional shakes between the injury on October 6 and his later transfer to the hospital on October 15, and that, because his jaw injury prevented him from eating solid food, those were the only times he ate during that period.

The evidence is somewhat disputed as to the exact care or medications plaintiff received, and as to his condition, during the period between the fight and his seizure and transfer to the medical center several days later.  Plaintiff testified that on the day after the accident, October 7, his face and throat were swollen and he was having difficulty breathing. He concedes that he received ibuprofen and steroid pills, as well as an injection of some kind, for the swelling.  While some of the evidence submitted suggests plaintiff's condition responded to the medications, there is also evidence that the swelling and breathing problems persisted and became worse.  Plaintiff's testimony was to the effect that he had significant breathing problems over several days and that, by the day he suffered the seizure, he was hysterical and fearing death from lack of air.  He testified that he made repeated requests for assistance but was told they could do nothing for him.  He indicates that an examining doctor inquired about getting him into the hospital due to his breathing difficulties but the request was refused by an unidentified individual, after talking to someone else.

4

On October 15, 2006, plaintiff suffered a seizure of some sort and was thereafter transferred to the medical center.   He remained in a coma for seven days.   On October 23, plaintiff underwent surgery to repair the fractured jaw. Since the surgery, plaintiff suffers permanent numbness in his chin.   Otherwise, the injured jaw has fully healed.

## Discussion

As noted above, plaintiff's civil rights claims are brought pursuant to 42 U.S.C. §1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

Section 1983 does not create substantive rights, but merely provides a remedy for deprivations of rights that are established elsewhere.   Albright v. Oliver, 510 U.S. 266, 271 (1994).   Here, plaintiff alleges violation of his Eighth Amendment right to be free from "cruel and unusual punishments," and the duty of prison officials to provide safe and humane conditions of confinement.   Though the Constitution "does not mandate comfortable prisons," prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Where, as here, a plaintiff seeks to impose liability on a county (or similar political subdivision), he must show that the county was the "person" who caused plaintiff to be

subjected to the constitutional deprivation.  That requires him to establish two elements: (1) that a county employee (or other agent) committed a constitutional violation, and (2) that a county policy or custom was the moving force behind the constitutional deprivation.  Myers v. Okla. Co. Bd. of Co. Commr's., 151 F.3d 1313, 1318 (10th Cir. 1998), quoting Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).  Per Monell, liability is not based on the theory of *respondeat superior* but on proof that the county's policy or custom was the "moving force of the constitutional violation."  Polk County v. Dodson, 454 U.S. 312, 326 (1981).

Where a plaintiff seeks to hold a supervisory individual liable in his or her individual, rather than official,[2] capacity, liability is based on his or her personal responsibility for the constitutional violation and does not require any proof of official policy or custom as the "moving force."  City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985).  As with the governmental unit, the supervisor cannot be held liable under §1983 on a *respondeat superior* basis, Monell, 436 U.S. at 694, n. 58, but may be liable even when not directly involved in the constitutional violation where the misconduct of the subordinate is "affirmatively linked" to the action or inaction of the supervisor.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  The plaintiff must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission.  Lankford v. City of Hobart, 73 F.3d 283, 287 (10th

---

[2]*A claim against an officer in his or her "official capacity" is the same as bringing a suit against the political subdivision itself.  Martinez v. Beggs, 563 F.3d 1082, 1091 (10th Cir. 2009), cert. denied 78 U.S.L.W. 3059 (U.S. Oct. 5, 2009).*

Cir. 1996).

The application of these principles in this case has been complicated by the fact that plaintiff has not asserted claims against, or even identified, the particular persons directly committing the alleged constitutional violations, i.e. the jail personnel who assigned plaintiff to a particular cell or the person(s) who allegedly diagnosed, treated, or responded to plaintiff's medical condition improperly. While their presence as parties is not essential, the named defendants' relationships with those persons are nonetheless important to the analysis of plaintiff's claims.[3]

The resolution of the pending summary judgment motions has also been complicated by the somewhat ragged pleading and briefing in this case. This lack of precision has complicated the definition of the claims and theories involved and the legal determinations to be made in light of them. For example, plaintiff's amended complaint sets out his §1983 "failure to protect" claim in only the most general and conclusory fashion. Though his amended complaint was prompted by the potential additional claims suggested by a July, 2008, Department of Justice Report about the Oklahoma County jail (the "DOJ Report"), plaintiff's amended complaint says little more than that defendant's violated his civil rights. The only specific allegations in the complaint in support of that claim are that plaintiff was put in a cell with persons "known to be racist 'skinheads.'" Neither defendant affected by

---

[3]*See* <u>Lopez v. LeMaster</u>, *172 F.3d 756, 760 (10th Cir. 1999): "Appellant not only did not name his jailer as a defendant in this suit, he failed to identify him at all. That omission seriously undermines his attempt to hold the county liable for any actions deliberately taken by the jailer."*

this claim sought dismissal for failure to state a claim or otherwise attempted to force plaintiff to identify the basis upon which he was proceeding.[4]  Indeed, it was not until the pretrial report was submitted, <u>after</u> the summary judgment motions were already on file, that plaintiff ever identified with any particularity the multiple grounds he apparently intends to use as the basis for his failure to protect claim.[5]

A note about the DOJ report, referenced above, is also in order.  In response to a number of arguments by defendants, plaintiff has said, essentially, "look at the DOJ report" and left it at that.  He has treated the DOJ Report as a sort of evidentiary hand grenade which, when lobbed into the room, clears it out without further discussion or analysis.  In fact, the DOJ Report has less evidentiary value than plaintiff seems to assume.  Although the court has considered the DOJ Report in connection with this motion and views it as evidence of some facts pertinent to the present motions,[6] it has not considered the portions of that report

---

[4]*Defendants did assert a "failure to state a claim" defense in their answers, but made no effort to bring the issue before the court for resolution.*

[5]*Plaintiff's amended complaint referenced broader factual grounds — deficiencies in classification, discipline, and the like — in connection with his state law negligence claim, but not otherwise.  See Amended Complaint [Doc. #36] at para. 13.  The pretrial report [Doc. #118] now references these alleged deficiencies as the basis for the failure to protect claims.  Defendants have not specifically objected to this broadening of the basis for the claim and, by signing the pretrial report, reflected their understanding and agreement that it supersedes the pleadings.  In light of this, and given that defendants have had reason to defend against the factual allegations as part of the negligence claim, the court concludes defendants have waived any objection they might otherwise have had to the broadened basis for claim relative to the pleadings.*

[6]*Defendants have filed a motion in limine to exclude the DOJ Report at trial on the basis of relevance, unfair prejudice and hearsay.  That motion will be dealt with more fully elsewhere, but, for present purposes, the court views the report as plainly relevant and, insofar as issues pertinent to these motions are concerned, not involving unfairly prejudicial evidence.  The hearsay objection, though lodged by defendants without any reference to or discussion of the exception set out at*

which are plainly legal conclusions — as to what the constitutional standards for proper jail operation are, whether the operation of the Oklahoma County jail meets constitutional standards, and the like.  Legal conclusions in the report, as opposed to factual observations or opinions based on factual matters, are not evidence for purposes of these motions.[7]  And without them, plaintiff's shorthand references to the report prove considerably less than plaintiff seems to assume.

In any event, defendants seek summary judgment with respect to both of plaintiff's Eighth Amendment claims — for failure to provide adequate medical care and for failure to provide adequate  protection — as well as the negligence claims against the County and Sheriff Whetsel individually.[8]

Medical Care Claim

A prison official's "deliberate indifference" to a substantial risk of harm to an inmate violates the Eighth Amendment.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994).  A claim for inadequate medical attention will be successful if the plaintiff shows "deliberate indifference

---

*Fed.R.Evid. 803(8), does have some application here.*

*[7]Fed.R.Evid. 803(8) excepts from the hearsay rule "reports . . . setting forth . . . matters observed pursuant to duty imposed by law . . . [including, in civil cases] factual findings resulting from an investigation made pursuant to authority granted by law. . . ."  The referenced "factual findings" include opinions based on factual matters.  <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988).  <u>Beech</u> did not resolve the status of <u>legal</u> conclusions, see p. 170, n. 13, but this court views legal conclusions by DOJ no differently than it would opinions as to legal matters by an expert witness.  See <u>Specht v. Jensen</u>, 853 F.2d 805, 809 (10th Cir. 1988).*

*[8]Defendant CHM has not moved for summary judgment on the negligence claim against it.*

9

to serious medical needs."  <u>Martinez v. Beggs</u>, 563 F.3d at 1088 (quoting cases).  An inadvertent failure to provide adequate medical care, or mere negligence in diagnosis or treatment, does not constitute a constitutional violation.  <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

The test for "deliberate indifference" is both objective and subjective.  The objective element of the test is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. <u>Martinez v. Beggs</u>, 563 F.3d at 1088, quoting <u>Mata v. Saiz</u>, 427 F.3d 745, 752-53 and <u>Farmer</u>.

The Tenth Circuit has previously considered a medical need "sufficiently serious" — thus meeting the objective element — where the need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Id.</u> (citation omitted).  In <u>Mata</u>, however, the Tenth Circuit explained that this definition should not be "read to say that the determination whether a medical need is sufficiently serious is to be made exclusively by the symptoms presented at the time the prison employee has contact with the prisoner."  <u>Id.</u> at 753.  The <u>Mata</u> court held that a court should also consider the seriousness of the alleged harm ultimately suffered from the unsatisfied need, not merely the symptoms known to the prison employee in determining whether a medical need is "sufficiently serious ."  <u>Id.</u>  Here, plaintiff contends that the permanent numbness in his chin, breathing difficulties, and lack of nutrition present a "sufficiently serious" harm for Eighth Amendment purposes.

10

The court concludes plaintiff has presented sufficient evidence to create a justiciable question as to the objective element of the applicable test.  If this case involved only the issue of delay in securing an x-ray or of the timeliness of the followup to it, the court would likely conclude no constitutional violation (something different from a simple negligence claim) had been made out even if plaintiff's evidence was accepted as true.  Similarly, though a closer question, the court would likely conclude that limited numbness in his plaintiff's chin, if established, was not sufficient.  While the cases recognize that the requisite serious injury may be shown by "lifelong handicap, permanent loss, or considerable pain", <u>Mata</u> at 751, the nature of plaintiff's chin numbness does not suggest permanent loss of sufficient seriousness. Most important for present purposes, however, is the evidence suggesting that plaintiff experienced severe breathing difficulties over several days, from the time of the fight on October 6 through his seizure and transportation to the hospital on October 15.  He testified that during much of that time he was not able to focus on anything other than getting his next breath.  He contends that on the day of the seizure he was panicked and in fear of death because of his struggle to breathe.  In <u>Sealock</u>, the Tenth Circuit held that, although "not every twinge of pain . . . is actionable," severe chest pain suffered for several hours was sufficiently serious.  <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1210 (10th Cir. 2000).  The court concludes the circumstances plaintiff asserts here are similar in severity to those in <u>Sealock</u> and that the evidence as to his breathing problems is sufficient to create a justiciable question as to the objective portion of the Eighth Amendment test.  This is so regardless of whether,

as plaintiff asserts, the breathing problems led to the seizure and subsequent coma.[9]

To meet the subjective element of the Eighth Amendment analysis, plaintiff must demonstrate that the defendant acted with "deliberate indifference" to his medical needs. Mata, 427 F.3d at 755.  Unlike proof of a sufficiently serious medical need, deliberate indifference must be considered separately for each defendant.  Deliberate indifference requires proof that the respective defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer, 511 U.S. at 841.  Plaintiff must prove that the defendant had actual knowledge of a substantial risk of harm to the prisoner, not merely that he should have known of the risk.  The subjective deliberate indifference element of the test "serves . . . to ensure that only inflictions of 'punishment' carry liability" under the Eighth Amendment.  *Id.*  A prison official acting negligently or even recklessly does not inflict punishment and so cannot violate the Eighth Amendment.

For CHM to be found deliberately indifferent, the evidence must show that, while treating plaintiff, CHM consciously disregarded a substantial risk of serious harm to the plaintiff.  Resolution of this question is one of the circumstances, referenced above, in which the plaintiff's failure to identify the particular actors alleged to have caused the constitutional deprivation becomes important.   The evidence submitted in support of plaintiff's summary judgment response is limited to plaintiff's own testimony, various medical records, and the DOJ Report.  That evidence, even taken in the light most favorable to plaintiff, suggests that

---

[9]*Defendants maintain this link must be established with expert testimony and that, after resolution of the Daubert challenge to plaintiff's medical/dental expert, there is no such evidence.*

CHM personnel did some sort of initial diagnosis, conducted an x-ray within a few days, provided some medications for pain and swelling, ordered that plaintiff receive a "mechanical soft" diet, ordered further treatment at O.U., and made an effort to get plaintiff transferred to O.U. when his breathing difficulties became acute.  The specific treatment of plaintiff may or may not have met the standard of care applicable to a state law negligence claim, but, tested against the more stringent standard necessary to make out a constitutional violation, this evidence does not support a basis for liability as to CHM.  With respect to the conduct of potential constitutional significance issue here, plaintiff has not come forward with evidence to show that CHM personnel were responsible for it.[10]  If CHM personnel prescribed a soft diet and jail kitchen personnel failed to deliver it, how can that deficiency be attributed to CHM?  If CHM personnel (i.e. the unnamed doctor referenced in plaintiff's testimony) sought plaintiff's transportation to the medical center in response to plaintiff's acute breathing problems, but was refused by some other unidentified person, how could a factfinder find a non-speculative basis for concluding that CHM was responsible?  As plaintiff's submissions do not supply evidence suggesting a non-speculative basis for a conclusion of deliberate indifference by CHM personnel, the court concludes CHM's motion must be sustained as to the §1983 claim.[11]

The question of whether the County can be said to have been deliberately indifferent

---

[10]*All parties appear to assume that, for purposes of §1983 liability, the acts of CHM's employees are attributed to it.  As no issue has been suggested in that regard, the court has also made that assumption.*

[11]*The state law negligence claims against CHM remain for resolution.*

is also problematic. The analysis is complicated by the failure of the County to identify, at least in any explicit sense, one or more material facts which, if true/undisputed, would preclude a successful claim by plaintiff.[12] The County does, however, argue that plaintiff has not alleged or shown a custom or practice that can be said to be related to plaintiff's circumstances here and plaintiff has responded to that, with a shorthand reference to the DOJ Report that does not identify the specific portions he deems pertinent. But the DOJ Report, as it relates to the provision of medical care, says little, if anything, that can be directly tied to the "sufficiently serious" medical condition and circumstances involved here.[13] Moreover, at least as to the medical care claim, the court concludes the DOJ Report, coupled with the other evidence before the court, does not provide a basis from which a factfinder could conclude that a county custom or practice was the moving force behind the identified, claimed constitutional violation. The Report's general references to problems with medical care and to generally unchanged conditions at the jail between the investigators' first visits and the later 2007 visits, plus the assumption that county decisionmakers knew of such conditions, are insufficient, in and of themselves, to establish a custom or practice which was the moving force behind the occurrence arguably constituting the constitutional violation

---

[12]As noted above, the County brief does not identify, at least in the manner contemplated by the Local Rule, the _material_ facts alleged to be undisputed.

[13]The report mentions one specific incident as showing inadequate response to a critical situation, but that incident is significantly different from the circumstances here. The Report does, however, make reference to general inadequacies in medical personnel responding to emergencies, which would arguably encompass the alleged failure to respond to plaintiff's constricted breathing.

here — some unidentified person's refusal to respond to plaintiff's requests or to respond affirmatively when asked by CHM personnel to transfer plaintiff to the hospital.  As with the claim against CHM, the unidentified nature of the persons involved becomes important.[14] How could a factfinder conclude, based on very general evidence of general problems with medical services at the jail, that those conditions constituted a custom or practice <u>which was the moving force</u> behind some unidentified person's decision to defer or deny plaintiff's transfer to a medical facility?  The court concludes it could not.  The DOJ Report's general reference to medical care problems is not sufficient by itself — and that is <u>all</u> plaintiff has pointed to as the basis for his custom and practice argument — to create a justiciable issue as to whether some county custom or practice was the moving force behind the particular constitutional violation arguably present here.

The question of whether a sufficient showing has been made as to the individual liability of Sheriff Whetsel is similar, though not exactly the same.[15]  As the sheriff and ultimate supervisor of the Jail,[16] he would presumably have had knowledge of the general

---

[14]The failure to identify the persons involved impacts the inferences to be drawn from the evidence as to the necessary causative links.  The court notes, however, that for County liability purposes, it does not matter whether the person refusing to permit plaintiff's transfer was a county employee or an employee of the county's contractor.  Either would potentially support county liability if the other necessary elements were present.

[15]Where, as here, the supervisory official sought to be held liable is also a county policymaker, the "custom/practice as moving force" and "affirmative link" tests generally lead to the same result.

[16]Under Oklahoma law, the county sheriff is in charge of the jail and the prisoners in it.  19 Okla. Stat. §513.

circumstances referenced in the DOJ Report.[17]  However, the limitations noted above as to the nature of the report and the speculative nature of any link to the actions of the unidentified persons who actions arguably violated defendant's constitutional rights renders plaintiff's evidence — and again, he relies solely on the inferences to be drawn from the DOJ Report — insufficient to create a justiciable question as to whether an affirmative link existed between Sheriff Whetsel's actions or inactions and the claimed constitutional violation.

While the general circumstances present here, referenced in the DOJ Report or otherwise, suggest a fertile ground for finding evidence which might support a basis for §1983 liability against someone as to the provision of medical care, the court concludes evidence has not been presented here sufficient to support a justiciable claim against these defendants.  Accordingly, the defendants' summary judgment motions must be granted insofar as they relate to plaintiff's §1983 claims for failure to provide adequate medical care.

<u>Failure to Protect Claim</u>

As with the medical care claim, an Eighth Amendment claim for failure to protect requires a showing of the prison official's  deliberate indifference to a substantial risk of harm.  Discussing that standard in the context of prisoner-on-prisoner violence, the Supreme Court has stated that, "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let

---

[17]*The issuance of the Report itself proves nothing as to Sheriff Whetsel's knowledge of conditions at the time, as the Report was issued after the incidents as to plaintiff.  Further, the fact that he knew DOJ was <u>investigating</u> conditions at the jail in earlier years does not suggest he knew what their particular concerns were or what their conclusions would be.*

the state of nature take its course." <u>Farmer</u>, 511 U.S. at 833 (citation omitted).  However, "it is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials." *Id.* at 834.  Eighth Amendment liability for failure to protect — as plaintiff alleges here against Oklahoma County and Sheriff Whetsel, in both his individual and official capacities — attaches only if the two-part conditions-of-confinement test is satisfied. *Id.* That is, liability only attaches where (1) the denial of protection is "sufficiently serious," and (2) the prison official acted with "deliberate indifference." *Id.*

Here, as referenced previously, the issue is complicated somewhat by plaintiff's lack of precision in identifying, in his pleadings, the basis for the claimed constitutional violation. However, as discussed above, the court concludes plaintiff's failure to protect claim should be understood to allege inadequate security and supervision, an "atmosphere" which created a high risk of detainee on detainee violence, inadequate disciplinary processes, inadequate classification processes, and inadequate investigation of serious incidents.  Final Pretrial Report [Doc. #118].

The court readily concludes plaintiff has presented evidence sufficient to create a justiciable question as to whether the objective element of the conditions-of-confinement test has been met — whether the deprivation of protection is sufficiently serious.  This requires the plaintiff to show that he was "incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834.  The factual matters (and opinions grounded in factual matters) referenced in the DOJ Report provide ample evidence that a substantial risk

of harm to inmates existed due to conditions in the jail.   Unlike its provisions as to medical care issues, the report provides considerable detail as to overcrowding, understaffing, and the impact of those and other conditions on the risk of inmate-on-inmate violence.   It contains factual or descriptive data as to the incidence of inmate-on-inmate violence.   It contains evidence from which a factfinder could conclude that plaintiff was incarcerated under conditions posing a substantial risk of serious harm.

As with the medical care claim, the subjective element of the conditions-of-confinement test requires a plaintiff to establish that the pertinent defendant acted with deliberate indifference to the harm.   With respect to the potential liability of the County and for present purposes, the question is whether plaintiff has presented evidence tending to show a policy, custom or practice that was the moving force behind the claimed constitutional violation.   The court concludes the DOJ Report relied on by plaintiff supplies sufficient evidence in that regard.   Its references to persistent, longstanding overcrowding, the degree of overcrowding relative to the design capacity of the jail, long term understaffing and other facts are some evidence that County policymakers, including the Sheriff, were aware of these deficiencies from 2003 through 2007 and that they "disregard[ed] that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.   The report's factually grounded conclusions as to the impact of conditions on the risk of inmate-on-inmate violence, coupled with the evidence as to plaintiff's own circumstances and the nature of the incident in which he was injured, are sufficient to create a justiciable issue as to whether the County's custom or practice in these respects was the moving force behind the constitutional deprivation

18

plaintiff asserts.  The County's motion for summary judgment as to the failure to protect claim must therefore be denied.

For largely the same reasons, the court concludes the summary judgment motion of Sheriff Whetsel in his individual capacity must also be denied.  As noted above, where the particular supervisory official at issue is also a county policymaker, the potential for county and individual liability often turns out the same way, albeit by theoretically distinct standards.  Here, Sheriff Whetsel was the ultimate supervisor of the Jail during the time of plaintiff's incident and the entire period covered by the DOJ Report.  The DOJ Report includes evidence that the sheriff was aware of the various conditions referenced in the report (among other things, as the recipient of critical incident reports resulting from events at the jail and of debriefings following the various investigatory visits by DOJ personnel) and is evidence that adequate steps to address the various deficiencies in conditions were not taken.[18]  Further, there is evidence from which the jury might conceivably conclude the necessary affirmative link between the sheriff's alleged inaction and plaintiff's claimed constitutional violation.

Sheriff Whetsel has also asserted that the doctrine of qualified immunity should shield him from personal liability.  Where a defendant asserts qualified immunity by summary judgment motion, the burden shifts to the plaintiff to show that, on the facts alleged, the

---

[18]*Defendants have supplied various reports they submitted in response to the DOJ Report, arguing that appropriate steps were taken or that the report is inaccurate.  Obviously, there may be evidence contrary to that included in the DOJ Report or otherwise offered by plaintiff, but the present issue is whether sufficient evidence exists to create a justiciable issue for trial.  As to the failure to protect claim, it does.*

defendant violated his or her constitutional or statutory rights and that the right in question was clearly established at the time of the alleged violation. <u>Fisher v. City of Las Cruces</u>, ___F.3d___, 2009 WL 3336075 at 6 (10th Cir. 2009). With respect to the first element, the question is whether the plaintiff "has demonstrated a reasonable jury could find" a violation of rights. *Id.* at 7. Is there a triable claim? As to the "clearly established" element, the question is whether the right at issue, in light of the specific context of the case rather than as a broad proposition, was clearly established at the time of the incident. *Id.* at 12. Supreme Court or Tenth Circuit precedent, or the "established weight of authority from other courts," must have found the law to be as plaintiff maintains. *Id.* Here, as discussed above, the court concludes plaintiff has presented evidence sufficient to create a triable issue as to whether his Eighth Amendment rights (insofar as the "failure to protect" claim is concerned) were violated. Further, a prisoner's right to safe conditions of confinement has been recognized at least since <u>Farmer</u> and Tenth Circuit authority has made it clear that a county sheriff may be personally liable, in the context of claims based on conditions in a county jail and involving failure to protect, where a constitutional violation is made out. <u>Lopez v. McMaster</u>, 172 F.3d 756, 760-61 (10th Cir. 1999). These decisions preceded the events involved in this case. The court concludes the doctrine of qualified immunity does not shield Sheriff Whetsel, in his individual capacity, from suit or potential liability on plaintiff's Eighth Amendment claim for failure to protect.

Accordingly, the motions for summary judgment of the County and Sheriff Whetsel, in his individual capacity, will be denied as to plaintiff's failure to protect claims.

**State Law Negligence Claims**

Plaintiff also brings state law negligence claims (1) against all defendants for failure to provide him adequate medical care and (2) against Oklahoma County and Sheriff Whetsel, individually and in his official capacity, for failure to protect him from other inmates. CHM has not moved for summary judgment on the state law negligence claim against it.

In response to the motion for summary judgment of Oklahoma County and Sheriff Whetsel, in his official capacity, the plaintiff concedes that these defendants are immune from the asserted state law tort claims under the Oklahoma Governmental Tort Claims Act ("GTCA") and that these claims "should be dismissed." Accordingly, based on plaintiff's concession, the court grants defendants' motion for summary judgment as to plaintiff's state law negligence claims against the County and Sheriff Whetsel in his official capacity.

Sheriff Whetsel, individually, is also immune from liability under the GTCA. The Act immunizes government employees from personal liability for torts committed while acting within the "scope of employment." 51 O.S. § 163(C). The Act defines "scope of employment" as the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned." 51 O.S. § 152(11). Under the GTCA, a "government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct." Pellegrino v. Oklahoma, 63 P.3d 535, 537 (Okla. 2003). To determine whether an employee was acting outside of the scope of employment, courts look principally to whether the employee acted maliciously or in bad faith in performing his duties. Id. at 537; Nail v. City of Henryetta, 911 P.2d 914, 916

(Okla. 1996).  Here, there is no evidence that Sheriff Whetsel acted maliciously or in bad faith in performing his duties.  He is therefore immune from personal liability for plaintiff's state law negligence claim, and his motion for summary judgment as to that claim is granted.

## Conclusion

Defendants' motions for summary judgment [Doc. Nos. 74, 75, & 79] are **GRANTED** as to plaintiff's §1983 claims for failure to provide adequate medical care and **DENIED** as to his §1983 claims for failure to protect.  The motions are **GRANTED** as to plaintiff's state law negligence claims against the County and Sheriff Whetsel.

Plaintiff's failure to protect claim and his state law negligence claim against CHM remain for trial.

**IT IS SO ORDERED**.

Dated this 26th day of October, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE